UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT SLEEMAN,

    Plaintiff,

v.                                                             Case No. 06-10953
                                                              Hon. Sean F. Cox

OAKLAND COUNTY, et al.

    Defendants.
_____

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for summary judgment. Both parties have fully briefed the issues and a hearing was held May 3, 2007. For the following reasons, the Court **GRANTS** Defendants' Motion for summary judgment as to: (1) Plaintiff's claim for false arrest under the Fourth Amendment against all Defendants; (2) Plaintiff's municipal liability claim against Defendant Oakland County; (3) Defendant Pankey on Plaintiff's claim of assault and battery; and (4) Defendant Pankey on Plaintiff's claim of excessive force based on the tasering. The Court **DENIES** Defendants' Motion for summary judgment as to: (1) Defendants Macdonald, Hill and Stoner on Plaintiff's excessive force and assault and battery claims; and (2) Defendant Pankey on Plaintiff's claim of excessive force based on unduly tight handcuffing.

**I.    BACKGROUND**

This action arises out of the arrest of Plaintiff, Robert Sleeman.

On July 18, 2005, at approximately 11:00 p.m., Plaintiff walked across the street from his

1

apartment to a local bar called Brandon's Landing/Boat Bar. Plaintiff allegedly had two swallows of beer at the Boat Bar, and had two swallows of beer at his apartment prior to coming to the Boat Bar. According to Plaintiff, at the Boat Bar he accidentally bumped into a woman who was behind him, and she grabbed Plaintiff's beer and poured it in his lap. The bartender at the Boat Bar called the police claiming assault. Plaintiff left the Boat Bar and walked back across the street to the parking lot of his apartment, which was located in a water softener business owned by Plaintiff.

Shortly thereafter, Defendants arrived and pulled into the parking lot of the Boat Bar but then came over to where Plaintiff was standing in the parking lot across the street. Plaintiff contends Defendants got out of their cars and ran at him. Plaintiff claims he raised his hands in the air and asked Defendants to "be careful with him because he recently had surgery on his umbilical cord." When asked for his identification, Plaintiff says he told Defendants it was in his apartment in the business adjacent to the parking lot.

Plaintiff argues he was thrown against the hood of a car by Defendant MacDonald. Defendants had difficulty handcuffing Plaintiff because he was wearing a large dive watch. Nonetheless, Plaintiff asserts that he was fully cooperative. Defendant MacDonald allegedly continued to push Plaintiff against the hood of the car and Defendant Stoner came over and tased Plaintiff multiple times. Plaintiff claims that he was tased three times while Defendants cuffed his right wrist, and three more times after he was fully handcuffed. Defendants laughed after Plaintiff was tased.

Plaintiff further alleges that Defendants did not "double lock" the handcuffs and as a result they continued to tighten. Plaintiff claims he repeatedly complained that the handcuffs

were too tight and that they kept tightening, but Defendants refused to remove or loosen them.

While in the police car, Plaintiff lost consciousness until one of the Defendant officers began to rub his chest. Plaintiff asserts that he told Defendants he was having trouble breathing and wanted medical attention. However, when medical help arrived, Defendants allegedly told the paramedics that Plaintiff refused assistance.

Plaintiff sought medical treatment after his release from jail. Plaintiff claims he suffered multiple infected taser wounds, numbness in his hands and other medical problems as a result of Defendants' use of excessive force.

On March 2, 2006, Plaintiff filed a Complaint alleging: (1) assault and battery; (2) constitutional violations pursuant to 42 U.S.C. §1983 against Defendant officers; and (3) municipal liability against Oakland County pursuant to 42 U.S.C. §1983. Defendants filed a Motion for summary judgment on February 12, 2007.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995). A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). The court must view the evidence in the light most favorable to the

nonmoving party and it must also draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

### III. ANALYSIS

#### A. Qualified Immunity

Plaintiff alleges violation of his Fourth Amendment rights pursuant to 42 U.S.C. §1983. "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Griffith v. Coburn*, 473 F.3d 650, 655-656 (6th Cir. 2007). However, even when a plaintiff states a claim under §1983, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Id.* at 656. This shield is called qualified immunity. There is a two prong inquiry to determine whether a defendant is entitled to qualified immunity, the court must determine: (1) whether "taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right;" and (2) "whether that right was clearly established on a specific level." *Id*. (citation omitted).

##### 1. Was Plaintiff arrested without probable cause?

Plaintiff claims he was arrested without probable cause. It is well-established that any arrest without probable cause violates the Fourth Amendment. *Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003).

"For a police officer to have probable cause for arrest, there must be 'facts and

4

circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense.'" *Id.*. (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "Probable cause requires only the probability of criminal activity not some type of prima facie showing." *Id*. "The probability of criminal activity is assessed under a reasonableness standard based on 'an examination of all facts and circumstances within an officer's knowledge at the time of an arrest.'" *Id*. (citation omitted). Once an officer is satisfied that he has probable cause, he may make an arrest without further investigation. *Id*. at 581. "In the §1983 context, the question of whether probable cause existed is left for the jury, unless there is only one reasonable determination possible." *Id*.

Plaintiff claims Defendants did not have probable cause to arrest him. Plaintiff was arrested for assault based on the incident at the Boat Bar. Defendants contend they had probable cause to arrest Plaintiff for assault because "he had assaulted a woman in the bar and later pled no contest to that charge." [Motion, p.9]. In his Response, Plaintiff argues Defendants did not have probable cause to arrest him for the assault because the only information Defendants had at the time they arrested him was that the suspect was male. In their Reply, Defendants claim they had probable cause to arrest plaintiff "even if they didn't have an exact description of the perpetrator of the assault and battery in the bar, because Plaintiff admitted he was the one they were looking for when they arrived, and because of statements by Plaintiff's companion, John Funck, that identified Plaintiff as the perpetrator." [Reply, p.2]. Defendants again point out that Plaintiff pled guilty to the charge. *Id*.

First, what Plaintiff later pled to the charge is irrelevant to the determination of whether

5

Defendants had probable cause at the time of the arrest. See *Crockett*, *supra*.

It is undisputed that dispatch told the Defendants that the suspect was male. No further physical description of the suspect was provided via dispatch. Plaintiff and John Funck were standing in the parking lot across the street from the Boat Bar when Defendants arrived. Plaintiff testified that he saw Defendants pulling into the Boat Bar and he said "hey, you know, everything is cool. I'm over here, no problem." [Response, Exhibit A, pp.44-45]. Plaintiff testified that Defendants came over to the parking lot where he was and demanded his identification and the situation escalated from there. *Id*. at 45-47. Funck testified that he and Plaintiff left the Boat Bar after the alleged assault and went to the parking lot across the street and waited for the police. [Response, Exhibit F, p.16]. According to Funck, the officers pulled into the Boat Bar and asked where the guy was and Plaintiff said "hey, I'm right here." *Id*. at 17. Funck claims that when Defendants arrived Plaintiff "was trying to explain to the cops what was going on." *Id*. at 21.

Plaintiff does not deny that he indicated to Defendants he was the person they were looking for. Rather, Plaintiff contends Defendants did not have probable cause because the description only stated that the suspect was male. However, Plaintiff's own testimony and that of his friend John Funck, support Defendants allegation that Plaintiff identified himself as the individual involved in the assault. Plaintiff waved over Defendants and said "I'm over here." [Response, Exhibit A, pp.44-45]. Funck corroborated Plaintiff's testimony, he claims they waited for the police and Plaintiff told Defendants "hey, I'm right here" when they inquired where the "guy" was. [Response, Exhibit F, p.16]. Further, Plaintiff tried to "explain what went on" when Defendants arrived. *Id*. at 21.

Accordingly, accepting Plaintiff's facts and evidence as true, Defendants had probable

6

cause to arrest Plaintiff for the assault at the Boat Bar. Because Plaintiff fails to establish a constitutional violation based on arrest without probable cause, Defendants are entitled to summary judgment on this claim.

## 2. Did Defendants use excessive force against Plaintiff?

"To determine whether an officer's use of force in effecting an arrest is excessive in violation of the Fourth Amendment, the court must apply an 'objective reasonableness' standard." *Griffith*, 473 F.3d at 656 (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)). The objective reasonableness standard considers whether officer's actions were reasonable in light of the facts and circumstances confronting them, without regard to the underlying intent or motivation, and without the benefit of 20/20 vision in hindsight. *Id*. "The reasonableness determination requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*. "The individual's interests in not having the particular force used against them is weighed against the officers' interest in performing these actions, as gauged by the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. Because determining reasonableness in this context is such a fact-intensive endeavor, summary judgment is improper if the legal question of immunity turns on which version of the facts is accepted, because then 'the reasonableness of the use of force is the linchpin of the case.'" *Id*. at 656-657.

### a. handcuffing

Plaintiff asserts Defendants used excessive force by not locking the handcuffs, which

allowed them to continually tighten. Plaintiff testified that he asked officers four times to loosen or remove the handcuffs because they were too tight. [Response, Exhibit A, p.69, 74, 114]. Plaintiff claims Defendants refused to remove the handcuffs stating that "you get them off when you get to jail." *Id*. at 69. According to Plaintiff, the tightness of the handcuffs resulted in tingling in his hands, red scars across his wrists, and numbness in his forearms and hands. *Id*. at 80-82. Plaintiff also submits photographs showing red lines around his wrists, purportedly from the handcuffs. [Response, Exhibit N].

Defendant Macdonald testified that he checked Plaintiff's handcuffs for tightness and double locked them. [Motion, Exhibit 3, p.42]. Defendant Macdonald also testified that Plaintiff asked to have the handcuffs removed but did not say that they were too tight. *Id*. at 42-43.

Although Defendants deny that Plaintiff's handcuffs were too tight, the Court must accept Plaintiff's direct evidence as true. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The Fourth Amendment prohibits unduly tight handcuffing in the course of an arrest. *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005). "In order to reach a jury on this claim, the plaintiff must allege some physical injury from the handcuffing, and must show that officers ignored plaintiff's complaints that the handcuffs were too tight." *Id*. (citing *Neague v. Cynkar*, 258 F.3d 504, 508 (6th Cir. 2001) and *Burchett v. Keifer*, 310 F.3d 937, 944-945 (6th Cir. 2002)).

Plaintiff presents sufficient evidence to establish a claim of excessive force based on overly tight handcuffing. He testified that he asked Defendants if they could "get the handcuffs off me" or "make them looser." [Response, Exhibit A, p.74]. According to Plaintiff he asked at least four times. Id. Plaintiff testified that, Defendants did not secure the handcuffs so that they continually tightened; he asked Defendants to loosen or remove the handcuffs because they were

8

too tight; Defendants refused his request; the handcuffs resulted in physical injury. Pankey testified that he heard Plaintiff complain the handcuffs were too tight, but did not do anything because he thought Macdonald had checked them for tightness. [Motion, Exhibit 6, pp.21-22]. Macdonald testified that Plaintiff asked him to remove the handcuffs, but did not tell him they were too tight. [Response, Exhibit B, p.42-43]. Stoner testified that he did not remember if Plaintiff complained the handcuffs were too tight. [Response, Exhibit C, p.42]. It is clearly established that unduly tight handcuffing violates the Fourth Amendment. *Lyons*, 417 F.3d at 575; and *Burchett*, 310 F.3d at 944.

Accordingly, on the facts alleged by Plaintiff, Defendants are not entitled to qualified immunity or summary judgment on Plaintiff's claim of excessive force based on unduly tight handcuffing.

      **b.  tasering**

Plaintiff also alleges a claim of excessive force based on Defendants use of a taser against him. It is undisputed that Plaintiff was tased three times by Defendants Stoner and Hill, although Plaintiff claims he was tased more than three times. Defendants argue that Plaintiff was resisting arrest "both verbally and physically." [Motion, p.10]. According to Defendants, they attempted to gain compliance with verbal commands and when that did not work, they tased Plaintiff. Plaintiff testified that he was cooperative with Defendants. [Response, Exhibit A, p.53]. Plaintiff claims he never raised an arm or moved towards Defendants. *Id*. He asserts that he raised his arms in the air to show his surrender. *Id*. at 53-54. According to Plaintiff, Defendants accused him of resisting because they were having difficulty getting the handcuffs on Plaintiff's left wrist. Plaintiff testified that he told Defendants he was not resisting, the problem was his large dive

9

watch and that they could take the watch off. *Id*. at 56. Allegedly, Defendants then tased Plaintiff to get the handcuffs on the left wrist, tased him again to get the handcuff on the right wrist, and finally tased him three times after he was fully handcuffed. *Id*. at 57-59. During the tasering Defendants continued to instruct Plaintiff to stop resisting, to which he replied that he was not resisting but "flopping like a fish" due to the repeated tasering. *Id*. at 60.

Plaintiff's testimony is corroborated by John Funck, who witnessed the arrest. Funck testified that Plaintiff was not resisting. [Response, Exhibit F, p.22]. He also testified that Defendants "stun gunned" Plaintiff six to nine times. *Id*. at 23. Funck asserts Plaintiff did not try to strike, kick, or wiggle away from Defendants. *Id*. at 24. Funck also claims Plaintiff told Defendants he was not resisting and that the watch was the problem. *Id*. at 27. Funck testified that Plaintiff was tased when he had one handcuff on and after he was fully handcuffed. *Id*. at 28.

Defendant Macdonald testified that he forcefully pushed Plaintiff against the car after Plaintiff pointed his finger in his face. [Motion, Exhibit 3, p.26]. Allegedly, Defendant Macdonald tried to handcuff Plaintiff but Plaintiff would not put his left arm behind his back and kept trying to pull his arms away. *Id*. at 30. Defendant Macdonald admits that Plaintiff was not trying to strike, kick, or punch him. *Id*. at 31. Defendant Macdonald claims that Defendant Stoner tased Plaintiff in order to get him to relinquish his left arm for handcuffing. *Id*. at 31-32. According to Defendant Macdonald, Plaintiff still would not release his left arm so Defendant Hill came over to taser Plaintiff again. Defendant Hill allegedly tased Plaintiff twice before Defendants were able to handcuff him. *Id*. at 37-38.

The other Defendants' testimony corroborates Defendant Macdonald's version of the

events. Defendants also submitted a videotape with their Reply. The videotape purportedly refutes Plaintiff's version of the events. However, the Court is not permitted to weigh the evidence and make credibility determinations on a motion for summary judgment. For purposes of this Motion, the Court must accept Plaintiff's direct evidence as true, particularly witness testimony. *Adams*, 31 F.3d at 382. Accordingly, the Court must determine whether Plaintiff established a constitutional violation based on the facts as alleged by Plaintiff.

If the Plaintiff's version of the events are accepted as true, Plaintiff establishes at least a question of fact as to the reasonableness of the use of force against him by Stoner and Hill. Plaintiff claims, and Funck's testimony supports, that he did not resist and that he explained to Defendants that his watch was the reason it was difficult to handcuff him. Plaintiff also claims that any movement was due to the tasering, not because he was resisting. It is undisputed that Plaintiff did not make any attempts to assault Defendants. Under Plaintiff's version of the incident, he did not pose an immediate threat to the safety of the officers or others, and was not actively resisting or trying to evade arrest by flight. Nonetheless, according to Plaintiff, he was tased several times by Defendants Stoner and Hill, including after he was fully handcuffed. This is sufficient to establish a question of fact on a Fourth Amendment violation.

"Even if a plaintiff can establish the violation of a constitutional right by an officer, he must additionally establish that the right was clearly established at the time of violation in order to avoid dismissal on the grounds of immunity." *Griffith*, 473 F.3d at 658. "To satisfy this second prong, the right must have been 'clearly established' in a particularized sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640

(1987)). Taking the facts as alleged by Plaintiff, it is clearly established that tasing an individual who is not resisting and poses no threat, especially after he is restrained, is a violation of the Fourth Amendment. See *Griffith*, 473 F.3d at 659 ("Cases in this circuit clearly establish the right of people who pose no risk to the police to be free from gratuitous violence during arrest.").

Although Defendants present a completely contrary version of events from Plaintiff's, "[w]here the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability, and thus summary judgment should not be granted." *Id*. at 657. Accordingly, Defendants Stoner and Hill are not entitled to summary judgment on Plaintiff's claim of excessive force based on the tasering.

With respect to Defendants Pankey and Macdonald, Plaintiff alleges they are liable for a failure to intervene against the use of excessive force. "[A] police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). Defendant Macdonald clearly knew the tasering would be administered, at least by Hill, and had the means and opportunity to prevent the tasering. In fact, Defendant Hill testified that Defendant Macdonald asked him to come over and "light [Plaintiff] up." [Response, Exhibit D, p.26]. Accordingly, Defendant Macdonald is not entitled to summary judgment on Plaintiff's claim of excessive force based on the tasering.

Defendant Pankey is entitled to summary judgment because there is no testimony that Defendant Pankey was involved with the tasering. He testified that when he arrived the tasering was complete. [Motion, Exhibit 6, p.19].

### B. Governmental Immunity

Defendants argue they are entitled to governmental immunity pursuant to MCL 691.1407(2), on Plaintiff's state law claim of assault and battery. However, Michigan's governmental immunity statute is inapplicable to claims of assault and battery. See *Sudul v. City of Hamtramck*, 221 Mich.App. 455, 481-482 (Mich.App. 1997). However, at the hearing, Plaintiff's counsel conceded there is no evidence that Pankey assaulted Plaintiff. Thus, Pankey is entitled to summary judgment on Plaintiff's claim of assault and battery.

### C. Municipal Liability

Plaintiff asserts liability against Oakland County based on the alleged constitutional violations against him.

"To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The custom or policy must have been the moving force behind the constitutional violation. *Gregory v. Shelby County, Tennessee*, 220 F.3d 433, 442 (6th Cir. 2000). "A municipality may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas*, 398 F.3d at 429. There are four methods of proving a municipal policy or custom, the plaintiff can look to: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. *Id*.

Plaintiff claims Oakland County is liable for failure to train its officers and for "tacit approval of excessive force." "To succeed on a failure to train or supervise claim, the plaintiff

must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Pendergrass v. Cleveland Municipal School District*, 455 F.3d 690, 700 (6th Cir. 2006). Similarly, to establish municipal liability based on inaction, the plaintiff must show: (1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the defendant's custom was the moving force or direct causal link in the constitutional deprivation. *Thomas*, 398 F.3d at 429. Proving deliberate indifference requires a showing of a "history of widespread abuse that has been ignored" by the municipality. *Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994)(citing *Canton v. Harris*, 489 U.S. 378, 397 (1989)).

Plaintiff fails to demonstrate a "history of widespread abuse" or a "clear and persistent pattern of illegal activity." Instead, Plaintiff relies on this single incident to establish a custom or policy. In the Sixth Circuit, "a single act may establish municipal liability only where the actor is a municipal policymaker." *Miller v. Calhoun County*, 408 F.3d 803, 816 (6th Cir. 2005)(citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)). In *Thomas, supra*, the Sixth Circuit ruled that the single incident of a shooting, investigated and found justified by the police department, was insufficient to establish a custom or policy condoning the use of excessive force. *Thomas*, 398 F.3d 432-433. The court held that municipal liability cannot be established by "attempting to infer a municipal-wide policy based solely on one instance of potential misconduct." *Id*. The court went on to state that a plaintiff "bears a heavy burden in proving municipal liability, and he

cannot rely solely on a single instance to infer a policy of deliberate indifference." *Id*. at 433.

The only other argument Plaintiff makes to support his municipal liability claim is that Defendants violated the Oakland County policy and procedure requiring them to warn Plaintiff before they tased him. [Response, Exhibit J]. This is unavailing. It is unclear how the alleged violation of an explicit municipal policy establishes municipal liability. Furthermore, the custom or policy must be the motivating force behind the constitutional violation. The alleged constitutional violation in this case is the unnecessary use of the taser, the policy relied on by Plaintiff only requires officers to warn before using the taser. Therefore, even if there were a municipally endorsed custom of ignoring the regulation that officers warn citizens before tasing them, that custom is not the moving force behind the alleged constitutional violation. The moving force behind the violation is the use of the taser, without regard to whether the use was precipitated by a warning.

Accordingly, because Plaintiff fails to establish a custom or policy that was the moving force behind the alleged constitutional violations, Defendants are entitled to summary judgment on his claim for municipal liability pursuant to §1983.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for summary judgment as to: (1) Plaintiff's claim for false arrest under the Fourth Amendment against all Defendants; (2) Plaintiff's municipal liability claim against Defendant Oakland County; (3) Defendant Pankey on Plaintiff's claim of assault and battery; and (4) Defendant Pankey on Plaintiff's claim of excessive force based on the tasering. The Court **DENIES** Defendants' Motion for summary judgment as to: (1) Defendants Macdonald, Hill and Stoner on Plaintiff's

15

excessive force and assault and battery claims; and (2) Defendant Pankey on Plaintiff's claim of excessive force based on unduly tight handcuffing.

      **IT IS SO ORDERED.**

      **s/Sean F. Cox**
      **Sean F. Cox**
      **United States District Judge**

**Dated: May 7, 2007**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on May 7, 2007, by electronic and/or ordinary mail.**

      **s/Jennifer Hernandez**
      **Case Manager**